UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                           Bankruptcy No. 07-30219
                                                 Chapter 7
Marie Goodall,

                 Debtor.
_____/

**MEMORANDUM AND ORDER**

The United States Trustee seeks dismissal of this case pursuant to 11 U.S.C. § 707(b).

In his motion, filed June 25, 2007, the U.S. Trustee alleges that the presumption of abuse arises

under section 707(b)(2)(A) and the case should be dismissed.  He further alleges that even if

Debtor Marie Goodall could rebut the presumption of abuse by demonstrating special

circumstances under section 707(b)(2)(B)(I), granting relief under Chapter 7 would still

constitute abuse based on a consideration of the totality of the circumstances under section

707(b)(3)(B).  Debtor filed a response on July 16, 2007, resisting the motion.  An evidentiary

hearing was held on August 28, 2007.

On March 23, 2007, Debtor filed a voluntary petition for relief under Chapter 7 of the

Bankruptcy Code.  On April 17, 2007, Debtor filed her bankruptcy schedules and Official Form

22A: Chapter 7 Statement of Current Monthly Income and Means-Test Calculation. Her Form

22A indicates an annualized current monthly income of $65,605.20. Because the average median

income for a family of four in North Dakota is $61,682.00, Debtor was required to complete the

remainder of Form 22A.  After the deduction of Debtor's applicable expenses, Line 50 indicates

a monthly disposable income of $527.94.  On Line 56, however, Debtor lists additional expenses

not already deducted of $200.00 for a third car operating expense and $200.00 for the extra operating expense for her 54-mile daily commute to work.

As a part of the U.S. Trustee's motion to dismiss, he attached an alternative Form 22A with several changes in both income and expenses. He listed Debtor's annualized current monthly income as $67,001.88. He included the additional $200.00 for her commute in her vehicle operation expense at Line 22 rather than Line 56, but he eliminated her additional $200.00 expense for the third car operating expense. The U.S. Trustee also eliminated the deduction at Line 40 of $140.00 for charitable contributions because Debtor was unable to substantiate these contributions.

At the hearing, Debtor did not dispute the propriety of the U.S. Trustee's changes, with the exception of his adjustment to her telecommunication services deduction at Line 32. Debtor had listed $363.20 under this line item, and the U.S. Trustee listed $53.20. Debtor pays $53.20 for internet service, and $310.00 for two cell phone plans. Debtor testified that she has two cell phone plans because she and her oldest son, a college student who lives away from home, use one plan, and her other children use another plan. She explained that the plan used by her oldest son and her has coverage further west, including in Montana where her son goes to school. Debtor testified that she needs at least one cell phone because she works away from home 10 hours per day, and the cell phone is the only way for her children to get a hold of her. She conceded that she could eliminate one of the plans and switch the entire family to one plan, but she has not checked to find out how much she could save by consolidating. She did testify, however, that she would be subject to a cancellation fee.

2

The U.S. Trustee used the same $100.00 deduction for health care expenses used by Debtor on her Form 22A. Debtor's records, however, indicate that her actual expenses in May, June, and July were $174.00, $765.00 and $200.00 respectively. One reason for the additional expenses was her daughter's trip to the emergency room in May. Also, in late April or early May, Debtor began losing her eyesight and having headaches. She went to the doctor and underwent an MRI. The MRI revealed a spot, and Debtor was referred to a neurologist. As of the hearing date, approximately four months after the referral, Debtor still has not been to a neurologist despite her continued vision problems and headaches. Migraines cause her to miss work at least one afternoon per week, and often an entire day. She testified that she has not seen a neurologist because she needed to spend her money on her children's back-to-school needs rather than additional medical expenses. The bill for the MRI was $345.40 after insurance, with $315.40 outstanding as of the hearing. She also has an outstanding clinic bill of $124.00.

Debtor has health insurance, but she testified she does not know the amount of her deductible. She testified that she has no idea what her future medical bills will be or what her insurance will cover. Her children are covered under their father's health insurance.

Among the sections of the Bankruptcy Code amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) is section 707(b) governing dismissal of Chapter 7 bankruptcy cases. As amended, section 707(b) provides that the court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). BAPCPA amended section 707(b) to replace a presumption in favor of granting discharge with a presumption that a case is an abuse of Chapter 7 if a

3

mathematical formula set out in the statute, referred to as the "means test," yields a minimum amount of monthly disposable income.  The means test calculates the debtor's current monthly income, as defined under 11 U.S.C. § 101(10A), based on the debtor's average income for the six months preceding the month of the bankruptcy filing.  If the debtor's monthly disposable income, after reducing the current monthly income by allowed expenses under section 707(b)(2)(A)(ii)-(iv), is more than the statutory ceiling provided in section 707(b)(2)(A)(i)(I-II) multiplied by 60, "the court shall presume abuse exists." 11 U.S.C. § 707(b)(2)(A)(i).

Section 707(b)(2)(B) provides that the presumption of abuse may be rebutted "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." If the inclusion of the expenses warranted by the special circumstances causes monthly disposable income to fall below the section 707(b)(2)(A) threshold amounts, then the presumption of abuse is rebutted. 11 U.S.C. § 707(b)(2)(B)(iv).  If a debtor fails the means test and cannot rebut the presumption of abuse, the case may be dismissed unless the debtor converts his or her case to Chapter 11 or 13.

In this case, Debtor acknowledges that the presumption of abuse arises under section 707(b)(2)(A)(i), but argues that the presumption is rebutted by her special circumstances. Specifically, Debtor asserts that her post-petition medical expenses constitute a section 707(b)(2)(B) special circumstance.

To establish special circumstances under section 707(b)(2)(B), a debtor must itemize each additional expense and provide documentation for the expense and a detailed explanation of the

4

special circumstances that makes the expense necessary and reasonable. 11 U.S.C. § 707(b)(2)(B)(ii)(I) and (II).

Debtor argues that her actual medical expenses for May, June and July averaged $379.66 per month, and that her outstanding bills are an additional $146.33[1] per month averaged over three months. As such, she suggests that the deduction for monthly medical expenses on Form 22A should be $525.99 ($379.66 + $146.33) instead of $100.00.

Debtor's argument fails for multiple reasons. First, an unidentified amount of Debtor's post-petition medical expenses are attributable to a trip to the emergency room by Debtor's daughter. Debtor did not explain why she was responsible for this expense given that the daughter is covered by her father's insurance. Notwithstanding, there was no suggestion that there is any likelihood of this expense recurring. Next, Debtor's suggestion that her monthly medical expenses should be listed as $525.99 presupposes that the 3-month snapshot of Debtor's medical expenses is a reliable indicator of ongoing reasonable and necessary medical expenses. This premise is not supported by the evidence. Most significantly, Debtor has not seen a neurologist as recommended by her doctor. Because of this, Debtor has received neither a diagnosis nor a prognosis, and her reasonable and necessary future medical expenses are entirely speculative. The neurologist appointment and any course of treatment might result in more than $100.00 in monthly medical expenses, but it might not. Lastly, the only documentary evidence Debtor provided for her additional medical expenses was the invoices from the clinic visit and

---

[1] In calculating the amount of the outstanding MRI debt, Debtor used $315.00 instead of $315.40. Using Debtor's figure, the total outstanding debt is $439.00 ($315.00 + 124.00) which averaged over 3 months (May, June, and July) is $146.33.

the MRI, leaving several hundred dollars worth of her claimed actual expenses undocumented. Debtor has not substantiated that she has a "serious medical condition" or other special circumstance that satisfies section 707(b)(2)(B).

Finally, even if Debtor had overcome the presumption of abuse, the Court would dismiss this case for abuse. Where the presumption of abuse does not arise or such presumption has been rebutted, the court nonetheless may dismiss the case for abuse under section 707(b)(1) if it finds that the debtor filed the petition in bad faith or if the totality of the circumstances of the debtor's financial situation demonstrates abuse. 11 U.S.C. § 707(b)(3).

Debtor did not dispute the accuracy of the U.S. Trustee's Form 22A except as to the health care and telecommunication expenses. The health care expenses have already been discussed, and the Court agrees with the U.S. Trustee that $100.00 is the appropriate health care expense deduction. The Court disagrees with the U.S. Trustee that the $310.00 cell phone expense should be eliminated entirely, but the Court believes the expense should be halved. A cell phone expense is reasonable in Debtor's case particularly in light of her situation as a single parent, but even she conceded that she does not need two separate cell phone plans. Subtracting half the cell phone expense ($155.00) from the U.S. Trustee's calculation of monthly disposable income results in $572.08.[2] The totality of the circumstances of Debtor's financial situation establishes that granting Debtor relief under chapter 7 would be an abuse.

Accordingly, the United States Trustee's motion to dismiss pursuant to 11 U.S.C. § 707(b) is hereby GRANTED unless Debtor opts to convert this case to a case under Chapter 13

---

[2] $727.08 - 155.00.

of the Bankruptcy Code. The Court will allow Debtor ten days in which to file a motion to

convert. If no such motion is filed within ten days, this Order will become final and this case will

be dismissed without further notice or hearing.

**SO ORDERED.**

Dated this September 14, 2007.

**WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT**